[S. F. No. 270.    Department Two.—May 13, 1896.]

EDWARD ANDERSON, RESPONDENT, v. THE PACIFIC BANK, APPELLANT.

BANKS — PLEDGE — SPECIAL DEPOSIT — INSOLVENCY — PREFERENCE OF PLEDGOR.—Where a special deposit of money was made with a bank as a pledge, to secure it from loss for the furnishing of bail, the title to the deposit remains in the pledgor, and, after cessation of the liability to secure which the pledge was given, an action will lie to recover the sum deposited, and in case of insolvency of the bank, the pledgor is not remitted to the rights of a general creditor, but may recover the entire sum deposited out of the assets of the bank.

ID.— WRONGFUL COMMINGLING OF FUNDS — ESTOPPEL.—The bank cannot plead its own wrongdoing to its own advantage; and the fact that moneys specially deposited in the bank by way of pledge were afterward wrongfully commingled and used as funds of the bank, without the knowledge or consent of the pledgor, cannot be urged by the bank in defense as effecting any change in the contractual relations and rights of the parties.

ID. — FINDING — MONEY IN BANK VAULTS. — A finding that the money pledged "went into the bank vaults through the regular channel," is not a finding that the special deposit was commingled with other funds, but is to be construed as a finding that the money went into the bank vaults as a special deposit in the regular manner.

ID.—CERTIFICATE OF DEPOSIT — RECEIPT.—Where a special certificate was issued to the pledgor upon the making of the deposit, showing on its face that it was "payable only on release of bonds," which the deposit was intended to secure, the certificate is in nature a mere receipt, expressing briefly the contract of pledge; and such certificate does not make the holder a general creditor of the bank.

ID. —INTEREST UPON DEPOSIT—DEMAND.—Interest can only be allowed upon a special deposit from the date of a wrongful refusal or failure to pay the same upon demand.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    J. C. B. HEBBARD, Judge.

The facts are stated in the opinion of the court.

*Sawyer & Burnett,* for Appellant.

There was no special deposit, as the money, when deposited, was commingled with the general funds of the bank, as was that of other depositors, and it was not agreed to be kept as a separate fund.    (Morse on Banks and Banking, sec. 190; Abbott's Law Dictionary.)    Trust funds deposited with a bank, or delivered upon bailment, which are mingled with the general funds of the bank, with no earmark to distinguish them, cannot be recovered in specie upon the insolvency of the bank.    (Hill on Trustees, *531;   *Wetherell* v. *O'Brien,* 140 Ill. 146; 33 Am. St. Rep. 221, note; *Franklin County etc. Bank* v. *Beal,* 49 Fed. Rep. 606; *Crane* v. *Pacific Bank,* 106 Cal. 64; *Mutual etc. Assn.* v. *Jacobs,* 141 Ill. 261; 33 Am. St. Rep. 302; *Otis* v. *Gross,* 96 Ill. 612; 36 Am. Rep. 157.) The money was not a pledge, but given as security, and the title passed to the bank.    (Civ. Code, secs. 2986–88; Jones on Pledges, sec. 501.)

*H. W. Hutton,* for Respondent.

The two thousand dollars, having been deposited as security, became and was a pledge.    (Civ. Code, secs. 2924, 2927; *Loughborough* v. *McNevin,* 74 Cal. 254; 5 Am. St. Rep. 435; *Stone* v. *Owens,* 105 Cal. 297.)    And the title remained in plaintiff, defendant being merely a bailee or depositary, with nothing but a lien and right of possession.    (Civ. Code, sec. 2888; *Stone* v. *Owens, supra; Haber* v. *Brown,* 101 Cal. 452.)    When the liability on the bonds ceased, plaintiff was entitled to the return of his money.    (Civ. Code, sec. 1822; *Palmtag* v. *Doutrick,* 59 Cal. 154; 43 Am. Rep. 245; *Loughborough* v. *McNevin, supra; Wetherly* v. *Straus,* 93 Cal. 287.) The transaction being a pledge, defendant had no right to use the money without a special contract to the contrary.    (Jones on Pledges, sec. 501; Civ. Code, secs. 1835, 3517, 3518, 3520, 3529; Code Civ. Proc., sec. 1963, subds. 20, 33.)    The court proceeded on the theory that

the money was a special deposit, and unless the findings are absolutely inconsistent with the judgment in that particular, the judgment must stand. (*Shelby* v. *Houston*, 38 Cal. 410; *Thompson* v. *O'Neil*, 41 Cal. 683; *Semple* v. *Cook*, 50 Cal. 26.) Interest was properly allowed as damages under section 3287 of the Civil Code. (*Martin* v. *Ede*, 103 Cal. 157; *Kelly* v. *McKibben*, 54 Cal. 192.) If the bank mingles the money, a trust is impressed to the exact amount on all other property of the bank, and plaintiff can recover. (*Massey* v. *Fisher*, 62 Fed. Rep. 958; *Henderson* v. *O'Conor*, 106 Cal. 385; *In re Johnson*, 104 Mich. 343; *People* v. *City Bank of Rochester*, 96 N. Y. 32; *Matter of Le Blanc*, 14 Hun. 8; affirmed, 75 N. Y. 598; *Farmers' etc. Nat. Bank* v. *King*, 57 Pa. St. 202; 98 Am. Dec. 215; *Stoller* v. *Coates*, 88 Mo. 514; *Harrison* v. *Smith*, 83 Mo. 210; 53 Am. Rep. 571; *McLeod* v. *Evans*, 66 Wis. 401; 57 Am. Rep. 287; *Peak* v. *Ellicott*, 30 Kan. 156; 46 Am. Rep. 90.)

HENSHAW, J.—Appeal from the judgment given in favor of plaintiff under the following facts: Plaintiff and defendant entered into a contract whereby defendant agreed to furnish bail for Harry Christian and Martin Olsen, who had been held for trial before the superior court. To protect defendant and the sureties it might furnish from liability or loss, plaintiff agreed to deposit with defendant the sum of two thousand dollars in gold coin as a pledge. Plaintiff delivered the money to McDonald, the acting president of the bank, leaving it with him in the president's room. He received from the bank the following acknowledgment:

"Edw. Anderson has deposited in this bank two thousand dollars—$2,000—(in gold coin), payable to self or order, on return of the certificate properly indorsed. (Payable only on release of bonds.) (Not subject to check.)                    R. H. McDONALD, JR.,

"W. S. MORSE,                                         Vice-President.
     "Teller."

The money afterward, but without the knowledge or

consent of the plaintiff, went into the bank vaults through the regular channels. The bonds were furnished, and neither defendant nor the sureties were subjected to any liability or loss thereunder. Subsequently the defendants under the criminal charge were surrendered into custody by their bondsmen, and plaintiff thereafter, upon February 26, 1894, made demand upon defendant, which had meanwhile become insolvent, for a return of the money pledged. The bank refused a return, and this action was instituted.

Under this statement, which is taken from the findings, appellant contends that the facts disclose a general, and not a special, deposit with the bank, and that upon the bank's insolvency plaintiff stands in the same position as that occupied by the general creditors of the institution.

It is unquestionably true that one making a general deposit with a bank in the usual course of business parts with title to the moneys deposited. In the case of a special deposit, however, which is a mere bailment, the rule is the same with banking institutions as with individuals. Whether the special deposit be under a contract of bailment for the better protection of the bailor's property, or under a contract of pledge as security for some specific obligation of the pledgor, title does not pass to the bailee or pledgee, but remains in the pledgor. The pledgee acquires no right to make general use of the property. (Civ. Code, secs. 1835, 2888.)

It would seem, therefore, that in this case the question is completely disposed of by the finding of the court that the money was given and received as a pledge, and by the additional finding that it was afterward carried into the bank's vaults through the regular channels without the knowledge or consent of the pledgor. But, indeed, all of the attendant circumstances substantiate the ultimate finding that the deposit was a special one, while none is inconsistent with it.

Defendant demanded a delivery to it of two thousand dollars, not for banking purposes, but to protect the bonds-

men it might procure. There was reason why the plaintiff should make a special deposit of two thousand dollars with the bank as bailee, and none at all why he should make a commercial deposit of that sum. The money was delivered in a manner strictly in accord with a contract of pledge, but quite inconsistent with the notion of an ordinary banking deposit. The so-called certificate of deposit issued by the bank is not a certificate of deposit, but a mere receipt, expressing, though briefly, the contract of pledge. Every contract by which possession of personal property is transferred as security only is to be deemed a pledge. (Civ. Code, sec. 2987.) Under such a contract the fact that the bank afterward wrongfully commingled and used the funds, if it did do so, cannot be urged by it in defense as effecting any change in the contractual relations and rights of the parties. It would be but allowing it to plead its own wrongdoing to its own advantage. (*Henderson* v. *O'Conor*, 106 Cal. 385; *Massey* v. *Fisher*, 62 Fed. Rep. 958; *National Bank* v. *Insurance Co.*, 104 U. S. 54.)

There is nothing in the case of *Mutual etc. Assn.* v. *Jacobs*, 141 Ill. 261, 33 Am. St. Rep. 302, upon which appellant relies, which can aid his contention here. The plaintiff in that case sued to recover the sum of six thousand dollars, deposited by it with the banking house of Kean & Co., as indemnity on an appeal bond. But, as the court declares, the plaintiff gave its check to Kean & Co., which was cashed by that house, and the funds thus received with *the knowledge of plaintiff* were mingled and used with the general funds of the bank, and there was nothing in the certificate of deposit issued and received by plaintiff which indicated a special deposit. The court merely finds from a review of the evidence that it was not established that the deposit was special.

In the case at bar the trial court finds a special deposit, and does not find a commingling and use of the money with plaintiff's knowledge. Indeed, it does not find any such commingling and use at all. It merely

finds that after its reception, and without plaintiff's knowledge or consent, the moneys "went into the bank vaults through the regular channel." The bank vaults are the usual and proper places for the reception and keeping of special deposits. The finding strictly means no more than that the money went into the bank vaults as a special deposit in the regular manner.

The court allowed plaintiff as damages legal interest upon the money from the date upon which Christian and Olsen were surrendered by the sureties. But, while plaintiff was entitled to a return of his money immediately after this event, defendant was not in default until its refusal after demand to make restoration of it. Not being in default, it should not be charged with interest as damages. This demand was actually made by plaintiff upon February 26, 1894, from which date plaintiff is entitled to interest as compensation.

The judgment is ordered modified accordingly, each party to bear his respective costs upon this appeal.

MCFARLAND, J., and TEMPLE, J., concurred.