HENRY L. B. LANGFORD BROOKE, Intervener, v. MATHEW KING, Assignee, Appellant.

**Banks:** TRUSTS: *Preferences.* A claim against an insolvent bank for money paid to the proprietor of such bank, as agent for the sale of land, and deposited by him in such bank, is entitled to preference over the claims of general creditors.

SAME. A vendor of land is not entitled to a preference in the funds of an insolvent bank, the proprietor of which was an agent for the sale of the land, on the ground that the purchase money was deposited in such bank without authority, where the purchaser had an account at the bank and the payments were made by merely charging him with the amount of each payment and giving the vendor credit for the amount, unless there were actually in the bank funds of such purchaser to be applied on such payments.

EVIDENCE. A vendor of land, who claims a preference over general creditors in the funds of an insolvent bank, on the ground that the purchase money had been deposited in such bank without authority by the proprietor of the bank, who was agent for the sale of the land, has the burden of showing that the money was actually received by the bank.

**Appeal:** NOTICE OF MOTION. A motion to affirm a judgment on appeal will be discharged if there is no evidence of service in the record.

*Appeal from Crawford District Court.*—HON. S. M. ELWOOD, Judge.

WEDNESDAY, APRIL 6, 1898.

PRIOR to August 10, 1893, John H. DeWolf was engaged in business at Vail, Iowa, a part of which business was the operation of a private bank, known as the Citizens' Bank. August 10, 1893, he made an assignment for the benefit of creditors, both as to himself and the bank. The petition shows that prior to June 5,

1891, the intervener was the owner of the undivided nine-twenty-fourths of section 17, township 84, range 37 west, in Crawford county; that a Mrs. White was the owner of the balance of said section before her death in May, 1885; that by her will, which was duly probated in Crawford county, Iowa, in January, 1887, intervener was duly appointed as agent, and, as such, had charge of the part of said land belonging to his estate; that in 1890, John H. De Wolf, as intervener's agent, collected the rents of said land amounting to nine hundred dollars, of which amount five hundred and thirty-three dollars was never paid over by him; that in 1891, De Wolf, as such agent, sold said land for the sum of fourteen thousand dollars, receiving four thousand dollars in cash, and the balance in annual payments of two thousand dollars each; that, of the four thousand dollars paid, eight hundred and eighty-two dollars and twenty-five cents remained in the hands of said agent; that July 1, 1892, he received a payment on said land of two thousand six hudred dollars, and July 1, 1893, another payment of two thousand four hundred and eight dollars, which he failed to turn over to intervener. The petition asks that said claims be allowed and made preferred claims against the estate. The answer denies the averments except as to the assignment and that the property came into the hands of the assignee. Upon a trial of the issues the district court established the claims, and gave them preference over the general creditors. The assignee appealed.—*Modified and affirmed.*

*P. E. C. Lally* and *J. P. Conner* for appellant.

*Swan, Lawrence & Swan* and *Shaw & Kuehnle* for appellee.

GRANGER, J.—Some questions of fact are controverted, and it will be well to first determine them. We find that the intervener was owner of a part of the land, and as to the remainder a trustee, so that his authority is complete for the purpose of creating the agency of De Wolf for the sale of the land and the collection of deferred payments therefor. We also find that all the money paid to De Wolf as rent, and on the purchase price, were paid to him as such agent. We may summarize by saying that we find the facts to be such as to sustain a preference of the claims over general conditions for all moneys actually paid to De Wolf, and by him retained, whether in the bank or otherwise. The controversy is mainly as to facts. The rules as to preference are so well settled that there is little or no contention as to the law. The ground upon which such preferences have been sustained heretofore is that, when trust money was paid into a bank for deposit, it was impressed with a trust character, the deposit being unauthorized; and, hence, that the estate, when the bank afterwards assigned, was enhanced to the amount of the deposit by the worngful act of the trustee or agent, and that it was no prejudice to general creditors to take from the fund what should not have been placed there. See *Independent Dist. v. King*, 80 Iowa, 498; *Plow Co. v. Lamp*, 80 Iowa, 723. It appears in this case that the payment of two thousand four hundred and eighty dollars, being the second annual payment of two thousand dollars, and the interest on deferred payments, was paid by draft, and we think that payment is clearly within the rule of the cases cited. One Wells was the purchaser of the land, and the payments were made by him. As to the four thousand dollars payment, at the time of the purchase, and the first annual payment of two thousand dollars, with the interest on deferred pay-

ments, making two thousand six hundred dollars, it appears that Wells had an account at the bank, and the payments were made by merely charging Wells with the amount of each payment, and giving the White estate,—which meant the previous owner of the land,— credit for the amount. A question is, does this difference as to facts, change the rule as to preference? It is thought that, until the money was actually paid to De Wolf, there was nothing to impress with the trust character. We are not disposed to state a rule so broadly, but we incline to the view that it cannot be said, in this case, as to the two payments thus made, that the estate was benefited by the changes made on the books; in other words, that any money was deposited in the bank as a result of the transaction. To be better understood, let us suppose the changes had not been made on the books, and the assignment had followed. We cannot say that precisely the same funds would not have been there for the general creditors as are there now. It appears that the charges were made against Wells without reference to the state of his account. He may have had either a debit or credit balance at the time. The burden is with the intervener to show that the money was actually received by the bank. If Wells had not the credit balance, so that, after the change on the books he was no longer a debtor as to that particular transaction, there would be a serious doubt of the change on the books amounting to a payment, conceding that he authorized it. One Haskins was the renter, and paid the rent claimed for, and the payments of rent were made in the same way, by merely charging Haskins on the books of the bank, and giving the White estate credit; and it is quite manifest that Haskins was, at all times, a debtor to the bank, and that no rent was really paid by him. The result was that De Wolf made himself a debtor to intervener for the rent, and Haskins a debtor to him. The same

would be true as to the Wells payments, if there was no money, so as to make an actual payment by the change on the books. Whether or not an actual payment made in that way would bring the case within the rule, as to preferences, we do not decide; for, because of the failure to show that there were funds of the debtor to be applied in payment, we think the right to a preference does not exist. It follows that the judgment should be so modified that the preference should apply only to the two thousand four hundred and eighty dollars payment. There is a motion by appellee to affirm the judgment, but there is no evidence of record of any service, and hence we disregard it. With the modification suggested, the judgment will stand AFFIRMED.