Daniels, J.
The judgment is for the recovery of $311.73 besides interest and the costs of the action. This was a bal-ance of a check drawn by the plaintiffs upon the Hanover *408 National Bank of New York, and certified by it, for the payment of the sum of $11,787.50. The plaintiffs had received a check drawn by Hiram E. Dixon, upon the defendant, payable to their order, for the sum of $11,775. This check was delivered by him to the plaintiffs for their accommodation, he not being indebted to them, or receiving any consideration for the check. They deposited the check to their account with the Hanover National Bank, and obligated themselves to take care of it on the following day. And it was for that object that their check was made upon and certified by the Hanover National Bank, and afterwards delivered to the Tradesmens’ National Bank. Dixon was indebted to the Tradesmens’ National Bank, upon a note made by Kilpatrick and indorsed by himself, upon which the bank had recovered a judgment against him. And it applied so much of the plaintiff’s check as was requisite for that purpose to the payment of this indebtedness of Dixon, and declined to pay the check which he had drawn to accommodate the plaintiffs, and which they had deposited to their account with the Hanover National Bank. The residue of the plaintiffs’ check was, however, afterwards certified by the defendant, and the controversy in the action was in that manner limited to the amount .applied to the payment of the debt and judgment owing by Dixon to the Tradesmens’ National Bank. The plaintiffs brought this action to obtain an application of this balance to the payment of the Dixon check, or the recóvery of the amount of it against the defendant. And "to support the action it was alleged that at the time when the defendant received the plaintiffs’ check, the teller receiving it, was informed that it was designed and intended to take up the check drawn by Dixon for the accommodation of the plaintiffs. And the court at the trial held the proof to be sufficient to establish the fact that this information had been given to the receiving teller of the" Tradesmens’ National Bank at the time when the.check was passed into his hands. This proof was objected to as insufficient to maintain the existence of this fact.
One of the plaintiffs testified that their check was delivered to a young man who was a clerk in their employment to be taken to the Tradesmens’ Bank, and there deposited to provide for the Dixon check, in favor of the plaintiffs.
And he testified under a commision issued to obtain his evidence, that when he handed the check to the receiving teller he told him to apply it to the payment of the check Dixon had given to A. D. Straus & Co., the day before. And the same answer was repeated in the'responses made by the witness to the cross-interrogatories annexed to the commission:
*409 The witness further stated that the receiving teller, when he received the check, went back to consult with the cashier or president, and in five or ten minutes returned and informed him that it was all right. The teller denied the fact of this information being communicated to him by the clerk, but he admitted that he did notify the president and cashier of the deposit of the check, and this was done immediately after receiving it. And so far his evidence had a tendency to support that given by the clerk, for there was a substantial agreement in the testimony of both these witnesses as to this circumstance. And as the clerk was - correct in his evidence concerning this fact, he may be expected to have been in the other statement made by him, that he gave this information to the receiving teller. There was a probability also arising out of the direction given to him to take the check to the bank for this purpose, that he gave the information which he testified he did to the receiving teller, for the duty to be performed by him could be discharged in no other manner. And upon this state of the evidence the court was supported in the conclusion drawn from it, that the receiving teller, acting in the business of the bank, did receive this information. And as it accompanied the check into the possession of the bank, it was bound by the direction to use it to meet or satisfy the Dixon check, and not apply it as it did in part to its own suspended account against him.
It is undoubtedly the law, as the counsel for the defendant contends, that by a deposit in the ordinary manner with a banking institution, or a banker, the security or money deposited_ will become the property of the ‘depository for which it will be indebted to the party for whose benefit the deposit may be made. This liability has often been maintained and defined to be the effect of such a transaction, but it may be controlled and a different liability created by making the deposit for. a special purpose, of which notice at the time is given to the depository. And that was admitted to be the law in Ætna National Bank v. Fourth National Bank (46 N. Y., 82). By making a deposit, whether it may be by check or money, to meet a particular obligation, the proceeds of the deposit or the money, if that is used in making it, becomes impressed with a trust to appropriate it to the specific purpose for which the deposit is made.
It is then received for a special object, and the party receiving it, subject to that restriction, has no right or authority to divert it from that object. People v. City Bank (96 N. Y. 32); National Bank. v. Insurance Co. (104 U. S., 54), where, in the course of the decision, it was said, *410 “But although the relation between the bank and its depositor is that merely of debtor and creditor, and the balance due on the account is only a debt, yet the question is always open to whom in equity does it beneficially belong. If the money deposited belonged to a third person, and was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his bank account.’’ Id,, 66. And this principle was followed and enforced in Ellicott v. Barnes (31 Kans., 170). And it is not in conflict with anything which was decided in Re Gothenberg Comm. Co. (44 Law Times, 166), or in the other authorities relied upon by the defendant.
When the plaintiffs’ check was received by the defendant, with information that it was to be used solely for this object, it had neither the right nor the authority to divert any part of it to the payment of the preceding indebtedness of Dixon to the bank, but it was bound after receiving the check to apply it to the object for which it had been received.
The defendant proposed to read in evidence an affidavit made by the clerk in support of an application for an injunction in the action in which no statement was contained of the fact that information had been given to the receiving teller, by him, of the purpose for which the check was to be used. This affidavit was offered upon the ground that the Elaintiffs, by using it in the application for the injunction, ad assented to the truth and completeness of the statements contained in it. But the evidence of the plaintiff Eberstadt, under whose direction the business was done and who had charge of the legal proceedings, was that he never had read the affidavit and had not adopted the statement of the clerk contained in it. And as this was the only evidence relating to the fact, there was no ground upon ¡which the defendant was entitled to have the affidavit received as evidence upon this trial.
The finding that the plaintiffs had paid to the Hanover National Bank the $811.78 in dispute has been drawn in question as unsupported by the proof, but the evidence of ! Eberstadt was that he had made such payment. It was also objected that the evidence did not show that the check of the plaintiffs had been paid to the defendant. But as it was certified by the Hanover National Bank and carried to Dixon’s account, and no complaint was ever made by either, of the officers of the defendant that it had not been paid, the fact was in such a condition as to be assumed against the defendant. Its officers were sworn upon the trial of the action and in no manner intimated that either of the checks remained unpaid. And, if either had, it is only a reasonable presumption to indulge in that one or the other, *411 if not all of the officers who testified, would have stated that to have been the case.
A very large number of exceptions were taken to the refusal of the court to find as it was requested on behalf of the defendant, but all the facts were found which were essential to the disposition of the action and the defense. The real contest in the case depended upon the controverted proof whether the defendant’s teller when he received the check was informed of the purpose for which it should be used, and when that was determined against the defendant the other questions in the case became more formal than substantial. As the complaint was framed it was designed to be an action in equity, but all the facts were made to appear by the pleadings which entitled the plaintiffs to recover this sum of money upon proof that the defendant received its check for the sole and only purpose of meeting and paying the check drawn upon it by Mr. Dixon. That fact was proved to the satisfaction of the court, and as the finding was not against the evidence in any view which can be taken of it, and there is no merit in the other objections presented in the case, the judgment should be affirmed.
Van Brunt, P; J., and Brady, J., concur.