ARKANSAS TRUST & BANKING COMPANY *v.* BISHOP.

Opinion delivered June 28, 1915.

BANKS AND BANKING—ACCEPTANCE OF CHECK—LACK OF FUNDS.—A bank will be liable to the holder of a check for the amount of the same, when it accepted the check and gave the holder a deposit slip for the amount thereof, although the drawer of the check had no funds in the bank at the time the bank accepted the check. To avoid liability the burden is on the bank to show that the deposit slip was not issued in payment of the check.

Appeal from Little River Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellee brought suit against appellant for $25 in the justice's court, and from the judgment there against him, appealed to the circuit court, where upon a trial anew, judgment was rendered in his favor, from which this appeal has been prosecuted.

It appears from the testimony that the Simms Grocery Company was a tenant of appellee and in a failing condition, and on November 16, gave him a check for $25 on appellant's bank, where the parties kept their accounts.

Bishop took the check and in the morning presented it at the bank, and after a conversation with Hunt, the cashier, a deposit slip for said sum was given to him.

About 4 o'clock in the afternoon, the bank cashier found Bishop in a drug store adjoining the bank and of-

fered the check to him, saying the bank could not pay the check as the drawer had no funds to take care of it. Bishop refused to receive the check and the cashier mailed it to him the same day, with a charge ticket attached, showing what it was for.

The next day, or within a day or two, Bishop took the check and charge ticket to the bank and threw it back through the cashier's window.

Bishop testified that when he presented the check for payment, the cashier asked him if he wanted the money; that he replied, no, to give him a deposit slip, which was done, and said his first information that payment of the check had been refused was about 4 o'clock in the afternoon when the cashier, Mr. Hunt, told him so.

The cashier testified that when the check was presented, he looked at it and handed it back to Bishop, saying that the drawer was checking a little too much, that thereupon Bishop replied, "Well just give me a credit slip for it then," to which the cashier said "all right," and issued a deposit slip.

It was further shown that the drawer of the check was overdrawn on the 14th; made some deposits on the 16th and 17th of over $100, but there was a check for $200 in the cashier's drawer, which had been paid which was being held as a cash item until enough deposits were made to cover it.

The appellee knew that the grocery company was insolvent, and he was to be appointed trustee to wind up its affairs, and the president of the bank learned of that fact before the check was mailed to Bishop in the afternoon of the 16th. On the 17th Simms, who drew the check for the grocery company, offered to pay Bishop $25, the amount of it, which he declined, saying he was going to make the bank pay it, that he had already accepted it.

The court refused to allow the cashier to state his understanding of the transaction of issuing the deposit slip over the objection of appellant.

It was admitted that Bishop was due the bank on an overdraft, when the suit was brought $6.56.

*A. D. DuLaney,* for appellant.

1.  There was no privity of contract between appellee and the bank, and no liability on its part unless it unconditionally accepted the check for payment, and the burden was on appellee to prove that appellant did so accept the check.   98 Ark. 7; 94 U. S. 343.

2.  The cashier should have been permitted to state why he handed the check back to appellee, and what his intention was as to the check, and whether or not it was taken to be held until Simms deposited funds to cover it. The jury should have had all the facts.   7 L. R. A. (N. S.) 93; *Id.* 694, and note.

3.  If the drawer of the check offered the next day to pay appellee the amount of the check, and the latter refused to accept it, and no injury had been done him, he was not entitled to recover from appellant, and the court should have instructed the jury to that effect.   146 S. W. 1034; 166 S. W. 986.

*James S. Steel, J. S. Lake* and *James D. Head,* for appellee.

1.  Passing a deposit slip to a depositor for a check raises a presumption that the check was accepted as cash. 7 L. R. A. (N. S.) 694; 59 N. W. 987; 5 Cyc. 534-5; 91 Wis. 53.   The proof in this case shows that the check was accepted as cash.   See 4 Fed. Cas. No. 1985.

2.  The question of privity does not arise in this case. When the cashier paid the check, he knew the status of the drawer's account, and elected to pay the check rather than to protest it or refuse payment.   Having made that election without being misled by appellee, the bank must abide by it.   146 S. W. 1034; 166 S. W. 986.

KIRBY, J., (after stating the facts).   The only question in this case for the decision of the jury was whether the bank accepted the check and became liable to the payment of the amount for which it issued its deposit slip to the drawee thereof.   The intention of the parties to the transaction could properly have been shown for the determination of this question, and the bank having issued its regular deposit slip or ticket for the amount of the check to the drawee thereof, the burden rested upon it to

show that it was not in payment of the check. The fact that the drawer of the check offered on the following day, after hearing that payment had been refused by the bank to pay the $25 to Bishop, which he refused to receive, would not relieve the bank from liability on its deposit slip, if it accepted and paid the check therewith, and the court did not err in refusing appellant's requested instruction numbered 4.

Neither do we find any error in the court's ruling, refusing to allow the cashier to state what he thought when issuing the deposit slip, as the record does not disclose what his testimony would have been on this point.

The attorney objected to his stating what he thought, and the court said, "Just tell what you did." After several questions, he was asked, "For what purpose did you give him that slip," and upon objection, the court said, "That is a question for the jury, better state the facts that occurred there," and it is evident from the record that the court only intended to exclude the testimony of what the cashier had in mind, unless it was made known to the appellant at the time, and no error is shown to have been committed in his so doing.

In *Rogers Commission Co.* v. *Farmers Bank of Leslie,* 100 Ark. 537, the court said:

"It was not necessary to the bank's liability that it should have on deposit to the drawer's credit more than the amount of this check at the time of its presentation, for it would have become liable to its payment by an acceptance of it, and could have permitted an overdraft as it had usually done, or withheld its own check, which it claimed to have in its drawer against the account of the maker of the check, etc."

The fact that the check was not charged by the bank to the drawer's account, and that the drawer did not have sufficient funds on deposit to pay the same, could properly be considered in determining whether the bank accepted the check and paid same in the issuance of its deposit slip, but the jury under proper instructions found the issues in favor of appellee, and the judgment is affirmed.